Whenever counsel is ready, we'll proceed to our next case, which is 24-4308. Ms. Donovan, we're happy to hear from you. Thank you, Your Honor. Good morning. May it please the Court. The government deprived Mr. Arevalo of a fair trial by repeatedly interfering with his access to favorable evidence, including through the deportation of a material witness and through failure to preserve evidence that was favorable to him because it supported his theory of defense. That standing alone is grounds for reversal, but it is not standing alone, because also in this case, at the very end, when Mr. Arevalo had rested his case, had already delivered what the district court called a very strong closing argument, co-defendant's counsel rose and gave an argument that the district court correctly found to be way beyond the bounds of an appropriate closing argument. Under these circumstances, this court should have no confidence in Mr. Arevalo's convictions. So your second argument is that the jury disregarded the instruction given by the district court to not consider the closing argument? Your Honor, I have two main points about that. The first is that we should look at what the court itself said months after this trial. Months after this trial, when Mr. Arevalo filed his motion for a new trial, we were before the district court, and the district court continued to express real concern that the jury had considered this information through expressing concern that this case should be reversed. So is your argument, though, it sounds like your argument is yes to my question, or your answer to my question is yes? Yes, Your Honor, for two reasons. One is that the law recognizes that there are certain circumstances under which it is impossible to believe what is essentially a legal fiction, which is that juries always follow the instruction not to consider evidence. The main context, of course, in which the United States Supreme Court has considered this issue is Bruton. And I think Bruton is instructive because in Bruton the issue is the defendant's inability to cross-examine an accusatory statement of a co-defendant. And the United States Supreme Court said in Bruton, in certain circumstances, information is so prejudicial and the stakes are so high that we're going to set aside this general presumption that juries can follow cautionary instructions. But here it's not an issue of evidence, it's an issue of an argument. And is there a case that you can cite where this court has found that an instruction to the jury to disregard argument was not followed by the jury? No, Your Honor, but there's also not a case where this court has dealt with a closing argument that was inappropriate almost from the beginning and wholly out of bounds. Why did we say that? I mean, I understand the district court found that, but what about it is so wholly inappropriate? Help me understand why you think, yes, the defense lawyer did some vouching. Surprise, surprise, right? This is like a common thing. It shouldn't happen, but it happens in lots of closings, sometimes unintentionally. Yes, there was some suggestion of facts not in evidence, you know, why the defendant didn't testify and the like. So maybe there's some questions about facts not in evidence, but those happen in like virtually every trial that goes on in federal court. And so what about it that you thought was so bad? It was like the comment on the evidence that was actually introduced, but that seems like a very plausible thing for a lawyer to do. Your Honor is missing the two things that I think were most prejudicial about this closing argument. The first was the discussion of Tercios's decision not to testify in which the – So that may be – I'm sorry. No, go ahead. That may be inappropriate. It's essentially talking about decisions a lawyer made with counsel. It seems like it's – Facts not in evidence. And privileged facts not in evidence. But, you know, in terms of prejudice, I mean, I'm not understanding how that – it seems like your argument is that suggests your client speaks, you know, good English and nevertheless, you know, didn't testify for some maybe other reason. I'm not following that argument. Absolutely. The comment was that Tercios Villatoro did not testify because he had only a grade school education and he does not speak English. There was evidence before this jury that my client does speak English. The implication of Tercios's argument was there is a good reason for Tercios not to testify. In contrast, my client who doesn't speak English or who does speak English had no good reason not to testify. But your – No, no. I'm sorry. I didn't mean to suggest I was interrupted. No, your Honor has actually put your finger on something that I think is even more important and flawed about this argument, which is that it did suggest something not in evidence, the story that counsel had heard from Tercios Villatoro. Because counsel specifically said, I am going to tell – we made the decision that I am going to tell Carlos's story. And Carlos's story then became that Blue, Mario Guevara Rivera, and Christian Arevalo Arias were the killers. And repeatedly – But there's some evidence for that, right? Like that's not like made up out of whole cloth. I mean there's some evidence from which a reasonable person could have told that as based on the evidence. I mean there's – like you can't say there was no evidence to support that theory. I get the theory is not a good one, but there's not no evidence to support it. First of all, that's a prosecutorial argument, and that's the problem here. It's the prosecutor's job to argue that there's evidence that Mr. Arevalo committed this murder. No, no. The defense lawyer's job is to argue that his client didn't do it. And he – like this wasn't some surprise. I mean early in the case he said like, listen, this was the theory, right? I guess I don't see it as a surprise. But putting aside the surprise, like defense lawyers don't typically like predisclose to anybody what their like argument is going to look like. That's sort of the advantage you have as a defense lawyer. I disagree on multiple levels, Your Honor. First of all, in Saffiro v. United States, the United States Supreme Court said that the problem is the problem of a second prosecutor. That's why these should have been separate trials, that a defendant should not be faced with a co-defendant who essentially acts as a second prosecutor. One. Two, it was a surprise. The tercios did not open on this. Tercios emphasizes that his theory was that Karen Figueroa was correct, that Christian Arevalo Arias had committed these crimes. But tercios did not ask a single question of Karen Figueroa. Three, tercios' counsel, when cross-examining the government's main witness, Guevara Rivera, cross-examined him on the theory that he had committed this murder with Abner Molina. He specifically asked him that. He never suggested that he had committed the murder with Christian Arevalo Arias. So there was an effort to hide this. But it went way beyond that because in this particular case, what was so damaging is that tercios' defense and Arevalo's defense had worked together to put on a case about the government's main witness, which was Guevara Rivera. And that case was, we can prove that Guevara Rivera is lying about his account of how this murder happened. And as part of that, we went in a joint presentation. I presented, as is reflected in the records, the photographic exhibits as tercios' lawyer went through them with the investigators who helped conduct this investigation. But the theory there is that, like, no, no, no, no, we were really working together. And then at the end, the defense lawyer decided that this obligation to his client, and he made the best argument that he could make. I guess I'm having a hard time seeing why, like, that maybe it's an error. I'm not, like, the question is not, you set it up not as, like, is this an error or not, right? Everybody sort of here assumes that there was an error. I'm not sure that's right, but let's assume it's an error. What you said is it is such an error that we must assume that the jury ignored the instructions of the district court and, like, held it against your client anyway. Like, that's the part that's hard, right? Like, we could have, I think, a realistic debate about whether this was an actual error or not. And I suspect we'll have that debate with your next case. But your point is not that. Like, that doesn't get you there, right? Just an error. It's got to be such an error that it's like a confession, like Bruton, that you think requires it. And I believe it was because what the jury saw was two defense teams work together. Then one stand up in closing when the other was deprived of an opportunity to respond and say, hey, here's what Tercios' real story is. And at that point implicate our voluarius. Yes, we could go back and forth about this a long time, but the district court was there, and here's what the district court said. If the government had done this, it would have been clear, reversible error. It would have been an absolute travesty. Does the guilty verdict for the co-defendant, Tercios, I may be saying it wrong, does that cut against your argument that the jury, in fact, does that suggest the jury, in fact, followed the instructions? I don't think so, Your Honor, because, first of all, we don't know what the jury considered. Sure. And in the eastern. Yeah, of course, but we have that presumption for a reason, and you're saying, hey, this is one of those cases where we can't follow the presumption. I'm suggesting that that verdict, if anything, would suggest maybe they did, and that's the only reason. Of course, we don't know what they did. And I would look at the Supreme Court's logic in Jackson v. Deneau, where we can't parse what the jury is doing with a confession once they've heard it. It's impossible to rely on the jury to set aside the voluntariness piece, decide something is involuntary, and then just set aside the whole confession. We can't assume that the jury can ignore something this prejudicial, and I'd like to reserve the rest of my time for rebuttal, if I may. Can I actually ask you a question about Mr. Vasquez's testimony? So I know that your position on the removal of Mr. Vasquez and the inability to cross-examine him, but my question is why that testimony that would have been given wouldn't just be cumulative to what is already presented, or it seems to me that there was sufficient other evidence presented at the trial and that Mr. Vasquez's testimony would not have been so helpful as to be grounds for reversal. I think on the issue of whether there are adequate substitutes for the testimony, what is most important about what happened here is that the FBI case agent who had interviewed Vasquez testified three times that he was fuzzy about his exculpatory statements. It's the only thing he was fuzzy about in this entire trial. And Detective Michelle McAllister, who is the other detective who testified about Vasquez's statements, was allowed, over objection, to testify that he was incredible, that she would not use his statements to support an affidavit, and that nobody had ever found him credible. So by deporting the material witness, the government was essentially able to substitute the credibility assessments of its own case agents as opposed to Mr. Aravalo being able to present the exculpatory evidence through the witness himself. But wasn't there other sufficient evidence to convict in the trial? I don't think that's the question, Your Honor. The question is whether there's a plausible showing of materiality. And where the district court went wrong on this issue is, one, in holding Mr. Aravalo to a higher standard than that required by Valenzuela, Bernal, and Moussaoui, but also the court made a vital factual error in stating that Mr. Vasquez would not have testified anyway. The court said he would not cooperate, he would not testify. There's no evidence in the record to support that. And I point the court to Vasquez Reyes's own statement in the transcripts where he told the police, the one I can testify against is Mario because he's the one who told me everything. This is a complex cast of characters in this case, but at heart there's something very simple here, which is that Mr. Aravalo's theory was that the government's two star witnesses, Guevara Rivera and Melina Rodriguez, committed these murders. The government deported the witness who spoke to Guevara Rivera the day after these murders, in which Guevara Rivera told him, I did this with Tecolote. It was timely, it was vital to the defense, and it went to the heart of Mr. Aravalo's theory. Can I ask just one question before you sit down? We'll give you time when you get back up. Thank you, Your Honor. On the special finding question that you raise, there's a finding, you know, under the Rico conspiracy and then there's a quiddle under the Vicar. Vicar has the purpose element that is distinct, so I guess I'm having a little hard time understanding why they're inconsistent because a reasonable jury, and we're not looking behind them too far, but a jury could have found that all of these things happened, but it was not done for pecuniary purpose or for purpose of rising in rank, which is a sort of additional element in the Vicar context. Why are these even inconsistent at all? Your Honor, on further reflection on this issue, I think that the key problem is really the Ramirez-Castillo problem. It's the fact that the government- This is the yes question? This is the special finding. But that's not really the argument that we made, right? The argument you made was these are inconsistent verdicts. They're not inconsistent because Vicar has a purpose element that Rico doesn't. Your Honor, I made both arguments, and in the district court I preserved the Ramirez-Castillo argument as part of the Rule 33 and as an alternate basis for relief under the Rule 29. Have we ever applied what I'll call the yes rather than guilty theory to special findings? I mean, Ramirez-Castillo was a case where they used special findings instead of a guilty verdict, right? So they basically wrote out the- As I understood it, they sort of wrote out the elements and answered yes to each element but never said guilty. Here we've got a guilty, but we've got sentencing factors that require a finding by a jury. Has any court ever applied this sort of like yes theory in the context of special jury findings? No, but I think what's important about the court's question is that the court referred to these as special sentencing factors. But under Apprendi, any fact that increases the maximum- Has to be found by a jury. Beyond a reasonable doubt. And the problem with the yes and no special finding as opposed to guilty or not guilty, as this court said in Ramirez-Castillo, is it creates a situation where the jury finds facts but does not then apply the burden to determine guilty or not guilty. And that's why I've come to believe- And do you think the instructions here said that they could make those findings based on a preponderance of evidence? I mean, the instructions seem pretty clear. I think what's confusing is the verdict form, not the instructions, because when the jury sees over and over again guilty, not guilty, guilty, not guilty, they know that guilt has to be proven beyond a reasonable doubt. No one has ever said to them, a finding of yes, a special finding of yes, has to be proven beyond a reasonable doubt as well. Thank you, counsel. Thank you. Ms. Bechara, we're happy to hear from you. Good morning, and may it please the court. Jacqueline Bechara for the United States. As the court understands, the parties for purposes of this appeal are in agreement that Mr. Tercios's closing argument was improper. The only point of dispute is whether the district court's corrective instruction was sufficiently curative to remedy any potential prejudice to Mr. Menjivar and Mr. Arevalo. The government's position, of course, is that this case falls within a long line of cases which apply the presumption that juries follow court's instructions. Judge Berner, I think you are absolutely correct to recognize that a key distinction between Bruton and the facts that we have here are that the arguments of counsel, no matter how improper they may or may have not have been, are simply not evidence, and the district court specifically instructed the jury that the arguments of counsel are not evidence. There was also some discussion about whether Mr. Tercios's argument was a surprise. As we'll speak more in the next case, of course, the government has agreed with the proposition that, and the district court made a finding, right, that no one before that Tercios's closing argument appreciated that he was going to point the finger at Mr. Arevalo. Do you take it as actually pointing the finger at Mr. Arevalo? I mean, maybe that's the implication, but do you agree with that? It is one implication to say, believe Karen Figueroa in saying that she was truthful when she reported back. But he doesn't actually say, it's the co-defendant that did it, right? Instead, what he says is, or the lawyer says, is like, believe this witness, not that one. Believe that witness when she says that my co-defendant and Guevara committed the double murder, not my client. So it is, in some respects, pointing the finger. We can talk about how strong of a pointing it is. But in any event, I don't think this is like, the key case on this issue, I believe, is Wilson, where in that case, the defendant was charged with a drug conspiracy, and then for the first time in closing argument, the government argued that he was actually responsible for a murder. And that's where this court said, well, there were a number of problems in that argument, one of which was this unfair surprise, completely blindsiding the defense with a charge that they were not prepared to defend against. A key distinction here, of course, that, I mean, it was no surprise that Mr. Arevalo was on trial for murder. He was facing that charge for several years. That's what we were all at trial to argue about. And so I think that's a key distinction, and why the instruction that the district court provided here was sufficient, unlike in the Wilson case. Can you address the deportation of the witness Vasquez? Yes, I do agree with you, Judge Berner, that Vasquez's testimony would have been cumulative to all of the other evidence that was already presented to the jury. Of course, well, at the outset, I would just reinforce that Vasquez had absolutely no personal knowledge of the crimes with which the defendants were actually charged, because he was not a member of MS-13. He was not present for any of these murders. All that he was a witness to were the statements that Guevara made to him. But if you read the transcript... But the statements could have been helpful, and the defendant was not able to bring the witness. And the government knew at the time of the deportation that the witness had relevant evidence. And so it just strikes me that the deportation deprived the defendant of the ability to bring the witness or to cross-examine the witness. But in any event, it doesn't seem like a great rule that every time the government records a witness's testimony and already has that evidence, that it can then deport the witness and deprive the defendant from the ability to cross-examine or to put the witness on himself. And that's what your argument seems to suggest, that it was sufficient simply because it was recorded. That's not our position. I think that goes to whether it was cumulative and here it happens. Right, but isn't your position that there's no error here because it was cumulative? That's one of our arguments. And what's the other? Sure. Well, at the outset, we don't think that he had material favorable testimony because he didn't have ‑‑ he was not an eyewitness to the crimes with which the defendants were charged. Would his testimony have been admissible as substantive evidence as opposed to impeachment evidence? I don't think so. Right, because his testimony, it is impeachment evidence. Sure. Right, but under 613, it's not substantive evidence. It doesn't go to show what he heard is true or not true. Instead, it only goes to impeach what another witness might have said, and that witness was already impeached. Yes, Your Honor. That's the theory of cumulative, that because it's not admissible as substantive evidence under the rules, that it's cumulative of the impeachment that we already have of the same witness. Yes, and in that way, I think it is quite similar to Kaizhang Zhu, if I'm pronouncing that correctly, and that involved similar facts where the defendant was relying essentially entirely on a single sentence in an FBI report on a witness's interview to say that the witness who had been removed before trial might possibly have testified favorably for the defendant. This Court recognized that that's not the standard that Valenzuela-Bernal applies. It has to be more than a speculative showing that the witness would have provided some material favorable testimony, but in any event, the Court recognized that the testimony would have been cumulative of testimony that was otherwise available to the defendants. And I would note it's not just a cumulative of testimony that the jury actually heard. It's just testimony that was available to the defendants. And so here, of course, the defendants, I mean, they could have asked Molina. They could have called Molina. The District Court made clear that its order only applied to the government. They didn't call Molina. But in any event, the District Court still permitted them to explore Vasquez's or Guevara's statements to Vasquez through numerous other avenues at this trial. I'm not sure whether the Court might have any questions about the special findings. I just wanted to highlight, I think, a distinction between my friend's position and what we asserted in our brief. I think my friend is correct that in the Rule 33 motion, the defendant did make this argument about Ramirez-Castillo. The distinction I would put to the Court is that the defendant, when the District Court called the parties in front of it to discuss the verdict form, neither Arevalo nor Menjivar objected to the freezing of the special findings, which is really what their argument seems to be now, especially if their argument is, well, the special verdict form itself did not require, did not separate from the instructions, tell the jury it had to be unanimous beyond a reasonable doubt, also as to the special findings, which we know the District Court did include in its instructions. If they wanted that included, I guess, two times on the special verdict form, it was incumbent on the defendants to ask for that relief, and they didn't do so. I have another. Are you through with your presentation? Yes, yes. In kind of reading the closings related to the closing issue, this isn't really about the closing issue, but it struck me that the defense counsel in the closing that's in question describes an MS-13 expert, Guzman, did I think the government put up? Is that right? Yes. And describes the testimony that Guzman said that MS-13 members will lie to judges and jury. Is that really what you had an expert testify about? On cross-examination, the expert testified that sometimes MS-13 members sort of aggrandize the crimes that they have actually committed. But that's on cross. That's not the government. On cross, yes. You didn't get an expert. We did not elicit that testimony. Okay. And on redirect, Mr. Blanchard elicited from the expert that if leadership of a gang had, if it got back to the gang, the clique leadership, that someone had lied about the fact of a crime or the extent of their participation in the crime, that could trigger gang punishment such as being assaulted or even killed. Did you, did the government with respect to this expert ever ask the expert what his, is it a he? Yes. What his opinions were? His opinions about the gang? Usually experts come in to talk about opinions. And it sounds like the expert mainly talked about facts. I understand your question. It is relatively common in these MS-13 cases to provide an expert to testify about. I understand his comment. I've had this question several times. I'm asking, did he give opinion testimony or did he give factual testimony? Not, I don't recall him rendering an opinion. Why would you say that? He might not have used the words opinion, but when he expresses views about what MS-13 does or doesn't do, he's not talking about specific instances. He's drawing conclusions, opinions about the organization and its members like an anthropologist might. That's fair, Judge Richardson. The expert was not involved in the investigation of this particular case. So his testimony was not about the facts of this case. It was more broadly about his expertise, having investigated numerous MS-13 cases and interviewed. Go ahead and finish. I'm sorry. Just based on his experience interviewing many MS-13 members. I think it's an interesting and fair question as to whether you have to formally say something like, do you have an opinion? You can look at a question and it may be opinion in nature or not. That's a debate worth that we probably can't resolve here. But do you agree it's improper for the government to just call an expert witness and only provide factual testimony that's not opinion at all? Your Honor, I think this would benefit from adversarial briefing. I'm just – That's totally fair. Okay. One example, if you called the expert and they were testifying as an expert and they said, and Defendant 1 told me X, that would be inappropriate. We've said that in a variety of cases. Yes, you have. You can't mix an expert's opinion testimony with factual information about the case at hand, right? Sure. So at least that far you would agree that that type of factual information, that is case-specific factual information, needs to be at least segregated, if not done by different individuals. That part we can get to maybe as far as Judge Quattlebaum suggests would help to have some briefing. Yes. I'm happy to address that in the next case where it's presented. Unless the Court has any further questions, we ask that you affirm. Thank you, Counsel. Ms. Donovan, we're happy to hear from you. Thank you, Your Honor. There are three main points I want to make in my rebuttal. The first is about the deportation of Juan Vasquez-Reyes, and that is, in the district court, the United States government admitted that Vasquez-Reyes was, quote, a material witness against Guevara. The United States has backed off that. Why would his testimony be admitted as substantive evidence rather than impeachment evidence? What would the substantive evidence be? We could have called him, in our case, to testify about the conversations that he had with Mario Guevara Rivera the day after. On what legal theory would those conversations come in? On the theory that Guevara… Was Guevara a testifying witness? Yes, he was a testifying witness. And so under 613, it comes in to impeach him. Correct. But not as substantive evidence, right? It's merely impeachment. So you can call him to impeach, right? So you would have to confront Mr. Guevara with the statement, right? Did you tell Mr. Vasquez that you killed the guy? He can confirm, deny, do whatever. If he denies it, then under 613, you can call Mr. Vasquez. But the court must instruct the jury that it is not substantive evidence. It's not evidence that Mr. Guevara did anything other than say the words, right? It's impeachment evidence only. It's not substantive evidence. Correct, Your Honor. And let me explain why I think that's so important in this case. First of all, I did cross-examine Guevara Rivera about this conversation. He denied that it happened. He denied ever speaking to Vasquez-Reyes about Melina Rodriguez, even though the evidence that he had had conversations with Vasquez-Reyes the day after the murder was indisputable. So this was an important point on which a disinterested third party— And you had evidence that you could introduce to impeach on that denial. Yes, correct, because Vasquez-Reyes said, The day after the murders, Mario Guevara Rivera came to my job site with a gun and a paint can. And the difference you're saying is that it would have been different if you had live evidence rather than non-live evidence. Like you were able to impeach that statement. You just thought you could impeach him better with live statements than with the evidence that you had. No, I wasn't able to effectively impeach that evidence because Guevara Rivera denied making the statement. The case agent claimed that he was fuzzy on the details that he had written down in his report, specifically only the detail that Guevara Rivera had said that Tecolote was with him, that's Abner Melina, for the double murder. And the third witness, the other case agent, Michelle McAllister, testified that nobody had ever found Vasquez-Reyes credible and that she did not believe he was credible over the objection that she should not be permitted to testify on the credibility of this witness. The government faults us for not calling Melina Rodriguez to testify this. Let's put that in context. Melina Rodriguez at this point has already been excluded from the trial due to Brady violations. Melina Rodriguez has given a report, a recent report, I believe November 2023, two months before the trial after this evidence came out. The government went and interviewed Melina Rodriguez and he denied ever speaking to Vasquez-Reyes because, mind you, in one of the other police reports, it also says that Melina Rodriguez himself told Vasquez-Reyes that he had committed the double murder. Melina denied ever talking to Vasquez-Reyes about these crimes or ever saying that. So the idea that we could have called a hostile government cooperator, whom our entire theory was the actual murderer, to testify about something so exculpatory baffles me. Additionally, Melina is not some pie-in-the-sky theory. I want to highlight for the court the fact that – Did you – wasn't there recordings of Vasquez saying this? There was a recording of his December 13th interview and we tried to present clips of that in the trial. The court said that the clips were, quote, miserable. Essentially, the district court held against us the lack of an adequate substitute for this testimony. The government faults, the use of pronouns, the government faults, the use of the interpreter who did that interview. But the fact of the matter is Vasquez-Reyes spoke not fluent English but pretty good English. He was Mirandized in English. He waived his rights in English, and then he sat there for this interview. Just so I understand, so did you play these clips or your argument is that you were precluded from playing any of these clips? We played some of the clips. When we began playing the clips on the third clip, the court cut us off and said it wasn't useful and told us to be more judicious, instructed us to go and work on limiting the clips, so we were not able to make a fulsome presentation about this. And the clips were – Right, but that's often the case, right? You get some impeachment you don't get to do but so much of it. Like, that doesn't seem – like, the court would have said the same thing if the witness was there, right? Like, you don't get to have a mini-trial on impeachment. You get a limited effort to do so. It seems like to me here you've got a couple of ways of doing it. I understand they weren't perfect. Impeachment never is. That seems like the rub from my perspective. Well, I disagree, Your Honor, and here's why. The clips weren't played in a vacuum. They had to be admitted through the detective who had given the interview, which was Detective Michelle McAllister, and she is the detective who sat there and testified and said, this was confusing, this was incredible, I would never take a statement of his and put it in an affidavit. Now, in addition to the fact that she systematically denied and dismantled his credibility, all of which were comments that did not make her police report, they were comments that came years later in trial when we were unable to produce the actual witness, this was a very problematic witness from our perspective. The government had, I encourage the court to look at her testimony in the government's case in chief, because the government had called her to testify about drug buys that she did with our client, and she had testified that her undercover persona is as a professional businesswoman and that she had to avoid any sort of sexual implication, but then there was over 800 texts. I understand your attacks on her credibility, too. We thank you. We understand you, too, were court appointed, and we thank you for your service, particularly in the context of what obviously was a long and difficult trial. Thank you, Your Honor. We'll come down and greet counsel. We'll take a brief break before we proceed.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Nicole G. Berner